UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| GREGORY FOSTER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 1:13-CV-193 JD |
| | ) |
| SUPERINTENDENT, | ) |
| | ) |
| Respondent. | ) |

OPINION AND ORDER

Gregory Foster, a *pro se* prisoner, filed a petition pursuant to 28 U.S.C. § 2254 challenging his 2002 conviction in Allen County for rape, criminal deviate conduct, and criminal confinement. (DE 1.) For the reasons stated below, the petition is denied.

I.  BACKGROUND

In deciding the petition, the court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Foster's burden to rebut this presumption with clear and convincing evidence. *Id*. The Indiana Court of Appeals set forth the facts underlying Foster's conviction as follows:

> On November 18, 2000, at approximately 3:00 a.m., S.J. was walking from her apartment to visit a friend. S.J. lived in the Eden Green Apartments in Fort Wayne, Indiana. As S.J. walked down the street, Foster drove by in a white Toyota Camry, and called out the name "Diane," thinking that S.J. was her aunt. S.J. informed Foster that she was not Diane and told him her first name. Foster offered S.J. a ride because it was late at night and she was walking alone. S.J. accepted the ride and entered the car. Once S.J. entered the car, Foster drove in the opposite direction of S.J.'s intended destination.
>
> As a result, S.J. informed Foster that he was going in the wrong direction. Foster told S.J. that he had to take care of some business first and encouraged her to calm down. At this point, S.J. became worried, but she was not scared. However, S.J. asked Foster several times to stop in order to let her out of the car. Foster ignored her requests and continued to drive to the Canterbury Green Apartments, on the other

side of town. Foster parked in a carport and left the car for about five minutes. S.J. testified that she remained in the car for the following reasons: (1) it was late, (2) she did not know the area, (3) it was dark, and (4) mostly white people, who she did not think would help her, inhabited the Canterbury Green Apartments.

When Foster reentered the car, he placed a black handgun on the dashboard and drove to Shoaff Park located in Fort Wayne, Allen County, Indiana. After seeing the handgun, S.J. was scared, and she began to cry. Again, S.J. informed Foster that she wanted to go home. Foster told S.J. to shut up. Then, Foster parked the car in a dark area of Shoaff Park surrounded by trees. He ordered that S.J. perform oral sex on him. When Foster threatened to use the handgun, S.J. performed oral sex on him as he requested. Afterwards, Foster instructed S.J. to pull her pants off and sit back in her seat. When S.J. complied, Foster lay on top of her, and engaged in sexual intercourse with her. S.J. testified that she cried and asked Foster to stop, but that he just told her to shut up and stop crying. Foster ejaculated on S.J.'s thigh and ordered her out of the car. S.J. testified that she refused to exit the car because she thought Foster would kill her if she exited the car. When S.J. refused to exit the car, Foster drove her back to her apartment. As Foster drove away, S.J. remembered the license plate number of the car Foster was driving.

As S.J. stood outside, she saw Fort Wayne Police Officer James King (Officer King) in a store parking lot. S.J. approached Officer King and told him that she had been raped. S.J. was hysterical and Officer King calmed her down before taking her statement. S.J. provided Officer King with a description of her attacker, and a description of the car he was driving with the license plate number. Officer King contacted the medics for S.J. S.J. was taken to the Sexual Assault Treatment Center and examined by Nurse Stephanie Good (Nurse Good). Nurse Good completed a rape kit for S.J. S.J. reported that her upper arms were tender. There were also fresh bruises on her lower extremities. In the meantime, Officer King ran the license plate number provided by S.J. and discovered that the car was registered to Shirley Foster, Foster's mother. S.J. later identified Foster from a photo array.

Indiana State Police DNA Analyst, Mary Reed, performed a DNA analysis on several of the samples from S.J.'s rape kit. The swab taken from S.J.'s left thigh was consistent with Foster's DNA. She testified that one African-American in fifty-eight billion would match the DNA found on S.J.'s left thigh and external genitalia. The vaginal and cervical swabs were consistent with S.J., Foster, and an unknown third contributor. The swab taken from S.J.'s right groin area was also consistent with both S.J. and Foster. On November 21, 2000, Fort Wayne Detective Hilda Williams (Detective Williams) interviewed Foster. Detective Williams testified that, at first, Foster denied that he picked up a girl during the early hours of November 18, 2000. However, Detective Williams testified that Foster later claimed that he picked up a girl, on November 18, 2000, and drove her one block up the street, but that no sexual contact occurred.

> On February 16, 2001, the State of Indiana filed an information charging Foster with Count I, rape, a Class A felony; Count II, criminal deviate conduct, a Class A felony; and Count III, criminal confinement, a Class B felony. On March 5, 2001, a warrant was issued for Foster's arrest. Foster was arrested pursuant to the warrant on March 7, 2001. On March 9, 2001, the trial court held Foster's initial hearing. On April 25, 2001, the State filed an additional information alleging that Foster was a habitual offender, I.C. § 35-50-2-8.
>
> A jury trial was held on April 23-24, 2002. On April 24, 2002, during a hearing held outside of the presence of the jury regarding final instructions, Foster objected to the State's tendered final instruction providing that a conviction can rest on the uncorroborated testimony of the victim, if believed beyond a reasonable doubt. The trial court gave the instruction over Foster's objection. On the same date, the jury found Foster guilty of rape, criminal deviate conduct, and criminal confinement. The jury also determined that Foster was a habitual offender.
>
> On May 20, 2002, a sentencing hearing was held. The trial court sentenced Foster to the Indiana Department of Correction for a period of fifty (50) years on Count I, enhanced by a term of thirty (30) years due to his habitual offender status; fifty (50) years on Count II; and twenty (20) years on Count III, for an aggregate sentence of 150 years; each sentence to run consecutively to the others.

*Foster v. State*, 795 N.E.2d 1078, 1082-84 (Ind. Ct. App. 2003) (footnotes omitted).

On direct appeal, Foster raised the following claims: (1) the trial court erred in connection with the jury instructions; (2) the trial court improperly denied his speedy trial motion under Indiana Criminal Rule 4; and (3) his 150-year aggravated sentence was excessive. *Id.* at 1082. The Indiana Court of Appeals affirmed his conviction and sentence. *Id.* at 1093. Foster sought transfer to the Indiana Supreme Court raising these same claims (DE 13-9), but his petition was denied. (DE 13-3.)

Thereafter, Foster pursued state post-conviction relief. *Foster v. State*, No. 02A04-1107-PC-398, slip op. at 5 (Ind. Ct. App. May 3, 2012). Following an evidentiary hearing at which he was represented by counsel, the petition was denied. *Id.* On appeal, he argued that his trial counsel was ineffective in failing to: investigate the DNA of the unknown contributor found

3

during S.J.'s examination; object to S.J.'s testimony that she was not sure whether Foster was the father of her child; move for a directed verdict at the close of the state's case; and object when the trial court submitted an *ex parte* response to a jury question. *Id.* at 7. He further argued that his appellate counsel was ineffective in failing to raise an argument based on *Blakely v. Washington*, 594 U.S. 296 (2004) challenging his enhanced sentence. *Id.* at 15. Finally, he argued that his conviction should be overturned based on newly discovered evidence showing that he was not the father of S.J.'s child. *Id.* at 21. The court rejected these arguments and affirmed the denial of post-conviction relief. *Id.* at 7-22. Foster filed a petition to transfer raising these same claims. (DE 13-14.) The petition was denied. (DE 13-4.)

Thereafter, Foster sought federal habeas relief. In his petition, he raises the following claims: his trial counsel was ineffective on numerous grounds; his appellate counsel was ineffective in failing to raise a *Blakely* claim; the trial court erred in denying his motion for release under Indiana Criminal Rule 4; and his conviction should be overturned because newly discovered evidence shows he is not the father of S.J.'s child.[1] (DE 1 at 3-6.)

II.     ANALYSIS

Foster's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court can grant

---

[1] The court notes that the petition is organized in a confusing manner, and some of the grounds are duplicative or overlapping. Where appropriate, the court has grouped the petitioner's claims together.

an application for habeas relief if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is contrary to federal law if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court or reaches an opposite result in a case involving facts materially indistinguishable from relevant U.S. Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from U.S. Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively" unreasonable. *Id.* This is a difficult standard to meet, and "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, —U.S.—, 131 S. Ct. 770, 786 (2011). Instead, to obtain relief, a petitioner must show

5

the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

    A.    Ineffective Assistance of Trial Counsel

Foster first asserts that his retained trial counsel, Richard Thonert, was ineffective on various grounds. Under the Sixth Amendment, a criminal defendant is entitled to "effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, 558 U.S. 4, 16 (2009). To prevail on such a claim, the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). On the deficiency prong, the central question is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices[.]" *Richter*, 131 S. Ct. at 788. The court's review of counsel's performance is deferential, and there is an added layer of deference when the claim is raised in a habeas proceeding; "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Furthermore, the court must "evaluate [counsel's] performance as a whole rather than focus on a single failing or oversight, " *Ebert v. Gaetz*, 610 F.3d 404, 412 (7th Cir. 2010), and must respect its "limited role in determining whether there was manifest deficiency in light of information then available to counsel." *Premo v. Moore*, —U.S.—, 131 S. Ct. 733, 741 (2011). "[C]ounsel need not be perfect, indeed not even very good, to be constitutionally adequate."

6

*McAfee v. Thurmer*, 589 F.3d 353, 355-56 (7th Cir. 2009) (citation omitted). Where the defendant wanted counsel to raise an argument that itself had no merit, an ineffective assistance claim cannot succeed, because "[f]ailure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996).

Under the Sixth Amendment, counsel also has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S at 690-91. The decision whether to investigate must be assessed for reasonableness based on the circumstances, "applying a heavy measure of deference to counsel's judgments." *Id.* at 691. Furthermore, counsel is given significant discretion in selecting a trial strategy based on the information known to him at the time. *See Yu Tian Li v. United States*, 648 F.3d 524, 528 (7th Cir. 2011) ("So long as an attorney articulates a strategic reason for a decision that was sound at the time it was made, the decision generally cannot support a claim of ineffective assistance of counsel."); *United States v. Lathrop*, 634 F.3d 931, 937 (7th Cir. 2011) (observing that as long as counsel's reasons were not "so far off the wall that we can refuse the usual deference that we give tactical decisions by counsel, his performance will not qualify as deficient.").

On the prejudice prong, the petitioner must show there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice under *Strickland*, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or

7

whether it is possible a reasonable doubt might have been established if counsel had acted differently." *Richter*, 131 S. Ct. at 791. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 792.

Foster first claims that his trial counsel was deficient in failing to investigate the DNA evidence pertaining to the unknown third contributor. In rejecting this claim on post-conviction review, the Indiana Court of Appeals properly identified *Strickland* as the governing standard, and concluded that Foster did not establish deficient performance or prejudice in connection with this claim. *Foster*, No 46A04-1109-PC-563, slip op. at 6-10. Based on the record, the state court's resolution of this claim was not objectively unreasonable.

As recounted above, the record shows that an Indiana State Police DNA analyst performed an analysis on several of the samples from S.J.'s rape kit. *Id.* at 3. The swabs taken from S.J.'s left thigh, right groin area, and external genitalia were consistent with Foster's DNA. *Id.* at 3-4. The vaginal and cervical swabs were consistent with the DNA of S.J., Foster, and an unknown third contributor. *Id.* At trial S.J. testified that she had engaged in sexual intercourse with her boyfriend, whom she identified as Robert, shortly prior to meeting Foster. *Id.* at 7. S.J also indicated at trial that she was on her way to visit another man, Darrell Masterson, at a pool hall when she met Foster on the street. *Id.* She then testified that she had realized that she had engaged in sexual intercourse with Ben Spencer prior to meeting Foster, as Spencer was her boyfriend at the time rather than Robert. *Id.* Post-trial DNA testing later revealed that a man with the last name of Pippin was the father of S.J.'s child. *Id.* at 8.

Foster argues that trial counsel was ineffective in failing to investigate the identity of the unknown contributor. However, the record reflects that counsel did not overlook this issue due to

8

lack of preparation or inadvertence; he was well aware of the issue but concluded that it would not be helpful to the defense to pursue the matter further.[2] At the post-conviction hearing, trial counsel explained his reasoning as follows:

> Well here's the situation. You've got the identity of an unknown individual and perhaps it was the boyfriend so what do you have with that. Well the jury recognizes that we have a number of men having sex with this lady. The issue is whether it's consensual or whether it was with a gun that was never found and that type of thing. So for example, well and hypothetically even assuming we could find the unknown individual what would, what relevance or benefit, he could say something he could help us or hurt us, we don't know. Or, so I, in trying to answer your question I believe at the time all, that this was coming into play it is a matter of trial strategy with the jury, it was beneficial for the jury to understand that she was sexually active and that she had sperm and she didn't know who it was.

*Foster*, No 46A04-1109-PC-563, slip op. at 9 (internal citation omitted).

Counsel's strategy was not "so far off the wall" as to constitute deficient performance. *See Lathrop*, 634 F.3d at 937. Indeed, leaving the matter unknown aided the defense's consent theory, since it suggested to the jury that S.J. was so promiscuous even *she* did not know with whom she had sexual intercourse that night. The trial record reflects that counsel vigorously pursued the defense theory he selected, making arguments and eliciting testimony from witnesses in support of the theory that S.J. had consented. Although the defense strategy ultimately proved unsuccessful, this cannot be attributed to an error by counsel, but rather to the strength of the evidence inculpating Foster. Such evidence included S.J.'s direct testimony that Foster raped her at gunpoint, the evidence of S.J.'s physical injuries, and the testimony of a police officer that S.J. was hysterical when she flagged him down after this incident. Based on the record, Foster has not demonstrated that counsel was deficient, or that in the absence of an

---

[2] The record reflects that Thonert had been practicing criminal law since 1974 and handled more than 100 jury trials during his career. (DE 15, State Court Record, Post-Conviction ("PCR") Transcript ("Tr.") at 14.)

9

error by counsel, the result of the proceeding would likely have been different. Thus, the state court's resolution of this claim was not unreasonable.

In a related vein, Foster argues that Thonert was deficient because he failed to object to S.J.'s testimony that she did not know whether Foster was the father of her child. (DE 1 at 4.) At the post-conviction hearing, trial counsel testified that he did not object to S.J.'s testimony on this issue because he did not want to highlight it for the jury. *Foster*, No 46A04-1109-PC-563, slip op. at 10. Second, counsel felt that if anything this testimony was beneficial to the defense, because it reinforced the theory that S.J. was so promiscuous she did not know who had fathered her child. *Id.* at 10-11. For the same reasons outlined above, this was not an unreasonable trial strategy. Foster's *post hoc* speculation that another defense theory might have been more successful does not establish deficient performance. Nor has Foster established prejudice, since he has not established that an objection to this testimony would have been sustained under Indiana law. *See Stone*, 86 F.3d at 717. The state court's rejection of this claim was not objectively unreasonable.

Foster next claims that counsel was deficient in failing to object when the trial court provided an answer to a jury question without prior notification to the parties. (DE 1 at 3.) The record shows that late in the evening during deliberations, the jury asked the court about certain aspects of the victim's testimony. *Foster*, No 46A04-1109-PC-563, slip op. at 13. The court declined to provide any response other than to direct the jurors to "[p]lease rely on your memories or your notes of the testimony[.]" *Id.* The court later advised Foster's counsel what had occurred, and counsel told the court that he felt the response given was appropriate. *Id.* At the post-conviction hearing, counsel further explained that he did not feel he had a basis to

object, as the court had answered the jury's question in "exactly" the manner he would have requested. (DE 15, PCR Tr. at 32-33.) Foster has not demonstrated that counsel's professional judgment on this issue was unreasonable.

Nor has he made the necessary showing of prejudice. In rejecting Foster's claim on post-conviction review, the Indiana Court of Appeals held that under Indiana law, the response given by the trial court was appropriate. *See Foster*, No 46A04-1109-PC-563, slip op. at 13-14. This court is bound by the state court's determination of state law in deciding whether counsel was ineffective in failing to object. *See Huusko v. Jenkins*, 556 F.3d 633, 637 (7th Cir. 2009) ("[A] federal court cannot issue a writ of habeas corpus that rests on a belief that a state court has misunderstood or misapplied state law."); *Earls v. McCaughtry*, 379 F.3d 489, 495 (7th Cir. 2004) (federal habeas court cannot "second-guess state courts in interpreting state law," and thus court was bound by state's determination that an objection would not have been sustained under state law in assessing ineffective assistance of counsel claim). Because the state court determined that an objection would have been unavailing under state law, Foster has not established deficient performance or prejudice based on counsel's failure to object. *Stone*, 86 F.3d at 717. For these reasons, the state court's rejection of this claim was not objectively unreasonable.

Although unclear, Foster may also be claiming that Thonert's overall performance was deficient, and that he essentially abandoned his role as an advocate. The record belies any such claim. Instead the record reflects that trial counsel was well-prepared and advocated vigorously on Foster's behalf throughout the trial proceedings. He entered his appearance less than four months prior to the scheduled trial date, after Foster fired his original attorney; he quickly sought Foster's immediate release under Indiana Criminal Rule 4, moved for a bond reduction, and

11

objected to the state's request for a continuance of the trial. (DE 15, State Court Record, Tr. of Proceedings, Nov. 30, 2001; Tr. of Proceedings, Dec. 10, 2001; Tr. of Proceedings Feb. 12, 2002.) He later objected to the state's motion *in limine* and filed his own motion *in limine* on Foster's behalf. (*Id.*, Trial Tr. at 3-28.) At trial he renewed the request for Foster's immediate release, conducted extensive *voir dire* questioning of prospective jurors, made an opening statement, thoroughly cross-examined S.J. and the other state witnesses, made a record as to various objections, requested limiting instructions, objected to the state's proposed jury instructions, gave a compelling closing argument, and argued for leniency at sentencing.[3] (*Id.* at 61-82, 110-61, 182-88, 236-300, 317-23, 356-97, 401-07, 422-30, 445-52, 470-85, 492-535; Sentencing Tr. at 12-23; Petitioner's Ex. G, at 98-99, 108-112, 118-19, 137-38, 206-07.)

In short, Foster has not established that counsel failed to serve as an advocate or that counsel's overall performance fell below the minimum standard required by *Strickland*. Based on the record, the state court's resolution of Foster's ineffective assistance of trial counsel claims did not constitute an unreasonable application of *Strickland*. Accordingly, these claims are denied.

    B.    Ineffective Assistance of Appellate Counsel

Foster also claims that his appellate counsel, Eugene Hollander, was ineffective in failing to pursue an argument based on *Blakely v. Washington*, 542 U.S. 296 (2004), on direct appeal. (DE 1 at 6.) In rejecting this claim on post-conviction review, the Indiana Court of Appeals Petitioner properly identified *Strickland* as the governing standard. *Foster*, No. 02A04-1107-PC-

---

[3] At the close of the evidence, counsel made a record to reflect that Foster was in agreement that he would not testify and that the defense would not be calling any witnesses. (DE 15, Trial Tr. at 492.) Counsel further asked him, "So Greg, everything we talked about, we've done[.]" (*Id.*) Foster responded, "Yes." (*Id.* at 493.)

398, slip op. at 15-21. The court concluded that Foster failed to establish deficient performance or prejudice in connection with this claim. *Id.* Based on the record, the state court's resolution of the claim was not objectively unreasonable.

A claim of ineffective assistance of appellate counsel is also subject to the *Strickland* analysis. *Howard v. Gramley*, 225 F.3d 784, 789-90 (7th Cir. 2000). On the deficiency prong, the petitioner must show that counsel failed to present a "significant and obvious" issue on appeal. *Id.* at 790. However, counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). On the prejudice prong, the petitioner must demonstrate that if the argument had been raised, there is "a reasonable probability that his case would have been remanded for a new trial or that the decision of the state trial court would have been otherwise modified on appeal." *Howard*, 225 F.3d at 790.

Here, Foster's argument is based on the U.S. Supreme Court's decision in *Blakely*. In a line of cases beginning with *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000), the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Blakely*, the Court further refined the rule to hold that "statutory maximum" means the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant, not the maximum sentence a judge may impose after finding additional facts. *Blakely*, 542 U.S. at 303-04.

Foster maintains that his enhanced sentence violated *Blakely* because it was based on aggravators determined by the judge rather than the jury; in his view counsel was deficient in

failing to raise this claim on direct appeal.[4] A review of the record undercuts this claim. At the time *Blakely* was decided, there was a long-standing rule in Indiana that an issue not raised at trial was waived on appeal. *See Bruno v. State*, 774 N.E.2d 880, 883 (Ind. 2002). Here, Foster did not preserve any Sixth Amendment challenge to his sentence at the time it was imposed. (*See* DE 15, Sentencing Tr. at 1-29.) At the post-conviction hearing, Hollander testified that he was aware no objection had been made or preserved on this ground by trial counsel.[5] (*Id.*, PCR Tr. at 49-51.) As it turned out, the Indiana Supreme Court later relaxed this rule with respect to *Blakely* claims. *See Smylie v. State*, 823 N.E.2d 679, 690 (Ind. 2005). However, Foster's counsel cannot be found incompetent for failing to predict or anticipate changes in the law. *See Valenzuela v. United States*, 261 F.3d 694, 700 (7th Cir. 2001) ("[T]he Sixth Amendment does not require counsel to forecast changes or advances in the law.").

Moreover, Foster has not established that the result of his appeal would have been different if counsel had raised a *Blakely* claim. The record reveals that Foster had an extensive criminal record, both as a juvenile and as an adult,[6] which was considered by the trial judge in

---

[4] *Apprendi* and *Blakely* have not been made retroactive to cases on collateral review. *See Wilson v. United States*, 414 F.3d 829, 831 (7th Cir. 2005) ("decisions in the *Apprendi* sequence do not apply retroactively on collateral review"). However, if a case was still "pending" when the cases were decided, the defendant is entitled to the benefit of these cases. *See White v. Battaglia,* 454 F.3d 705, 706 (7th Cir. 2006). Here, the state court agreed that Foster's case was not yet final when *Blakely* was decided. *Foster*, No. 02A04-1107-PC-398, slip op. at 18.

[5] At the post-conviction hearing, Hollander testified that he had been practicing criminal law since 1973, and handled approximately 200 felony jury trials as well as 200-300 hundred criminal appeals during his career. (DE 15, PCR Tr. at 40-41.) Counsel testified that in his professional judgment it was best to focus on "the strongest issues and don't dilute those issues by raising lesser issues." (*Id.* at 53.) He felt that the three arguments he raised were the strongest arguments Foster had, including an error in the jury instructions which, if successful, would have necessitated a new trial. (*Id.*) Counsel's strategy was not unreasonable. *See Smith*, 528 U.S. at 288 (observing that appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal").

[6] The record reflects that Foster had juvenile delinquency adjudications for shoplifting, rape, and battery; adult convictions for robbery, criminal recklessness, possession of marijuana, and public intoxication; and had his probation revoked on two separate occasions. (DE 15, Trial Tr. at 506-35; Sentencing Tr. at 1- 24.)

imposing an enhanced sentence. This was proper even after *Apprendi* and *Blakely*. *See United States v. Elliott,* 703 F.3d 378, 381 (7th Cir. 2012) (observing that even after *Apprendi* and *Blakely*, "a defendant's recidivism is not an element of the offense which must be found by a jury beyond a reasonable doubt, but rather is a sentencing factor that may be found by the sentencing judge"). Under Indiana law, a defendant's criminal history alone is sufficient to support the imposition of an enhanced sentence. *See* IND. CODE § 35-38-1-7.1(a)(2) (listing "history of criminal or delinquent behavior" as an aggravating factor supporting enhanced sentence); *McCarthy v. State*, 749 N.E.2d 528, 539 (Ind. 2001) (holding that one aggravator is sufficient to support an enhanced sentence under Indiana law). Thus, the Indiana Supreme Court has held that where a defendant has a criminal record which, by itself, supports the imposition of an enhanced sentence, there is no need for resentencing notwithstanding a *Blakely* error. *See Robertson v. State,* 871 N.E.2d 280, 287 (Ind. 2007). Accordingly, Foster has not demonstrated that his case would likely have been reversed for resentencing had counsel raised a *Blakely* claim. *See Howard*, 225 F.3d at 790; *Stone*, 86 F.3d at 717. Based on the record, the state court's resolution of this claim was not objectively unreasonable. Accordingly, this claim is denied.

    C.    Violation of Indiana Criminal Rule 4

Foster next claims that the trial court erred in denying his motion for immediate release pursuant to Indiana Criminal Rule 4. (DE 1 at 3.) That rule provides in pertinent part:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.

IND. CRIM. R. 4(B). The rule also provides instructions for calculating the 70 days. *Id.* Foster claimed on direct appeal that the trial court violated Criminal Rule 4(B), but the Indiana Court of Appeals rejected this argument. The court concluded that a portion of the pretrial delays were due to Foster's own actions, since he fired his attorney shortly before the scheduled trial date and withdrew his objection to the state's motion for a continuance. *Foster*, 795 N.E.2d at 1086-87. Foster argues that the court's analysis was erroneous. (DE 1 at 3.)

Upon review, it is apparent that Foster is claiming an error in the application of state law, which does not provide a cognizable basis for granting federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas relief is only available for a violation of the U.S. Constitution or other federal laws). In his traverse Foster attempts to reformulate this claim as being premised on federal law. (DE 19 at 7-8.) However, he did not raise a federal claim on this ground in his petition, and a traverse is not the place to be raising a new claim for the first time.[7] See RULE 2(C)(1) OF THE RULES GOVERNING SECTION 2254 CASES (providing that all grounds for relief must be contained in the petition). Furthermore, he did not raise a federal claim on this ground in the state proceedings. Instead the argument he presented to the Indiana Supreme Court was based entirely on state law. (DE 13-9.) To properly exhaust, a petitioner must "present both the operative facts and the legal principles that control each claim

---

[7] In his federal petition he articulated the claim as follows: "Foster's conviction and sentence should be set aside because he was not brought to trial pursuant to Trial Rule 4. . . . Foster should have been discharged because he was not brought to trial within seventy (70) days from his Motion for Speedy Trial proceedings to Criminal Rule 4(b)." (DE 1 at 3.) Unlike the Indiana trial rule, the U.S. Constitution does not provide a set deadline by which the defendant must be brought to trial. Rather, evaluating a constitutional speedy trial requires balancing four factors: (1) whether the delay was uncommonly long; (2) whether the government or the defendant is more to blame for the delay; (3) whether the defendant asserted his right to a speedy trial in due course; and (4) whether the defendant suffered prejudice as a result of the delay. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). Foster has not provided an analysis of these factors here, nor did he do so in the state proceedings; instead, his argument throughout has been that he was not brought to trial within 70 days as required by Indiana law.

to the state judiciary" at each level of state review. *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007). This includes alerting the state court to the "federal nature" of the claim. *Baldwin v. Reese*, 541 U.S. 27, 33 (2004). Foster did not do that here. His claim of state law error cannot be reasserted in this proceeding, nor can he reformulate his claim at this stage to encompass the violation of a federal right.[8] Accordingly, this claim is denied.

D. Actual Innocence

Finally, Foster argues that the court should overturn his conviction because newly discovered evidence establishes that he is not the father of S.J.'s child. (DE 1 at 4.) In support, he points to evidence from an Illinois paternity case reflecting that another man was the father of S.J.'s child. *Foster*, No. 02A04-1107-PC-398, slip op. at 21. Foster's claim is unavailing. Although actual innocence may be used as a "gateway" to review a procedurally defaulted claim, it is not cognizable as a free-standing claim on federal habeas review. *Schlup v. Delo*, 513 U.S. 298, 315 (1995) (habeas petitioner's claim of innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."); *Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *Ruth v. United States*, 266 F.3d 658,

---

[8] Foster has not expressly raised this argument, but the court has considered that ineffective assistance of counsel can be used to excuse the failure to properly exhaust a claim in state court; however, for ineffective assistance to excuse a procedural default, it must have been exhausted as an independent claim. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). If the ineffective assistance claim itself was not properly raised in state court, "the petitioner will be fully defaulted." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002). Here, Foster complained about other aspects of appellate counsel's performance, but he did not raise any claim pertaining to counsel's failure to present a federal speedy trial claim on direct appeal. As such, this claim is fully defaulted. To the extent Foster is claiming that actual innocence excuses his failure to present a federal speedy trial claim in the state proceedings, that argument is addressed in the next section.

661 (7th Cir. 2001) ("An argument of actual innocence, based on newly discovered evidence, does not implicate the Constitution"); *Milone v. Camp*, 22 F.3d 693, 700 (7th Cir. 1994) ("Supreme Court precedent does not allow a federal court to issue a writ of habeas corpus only on the ground that [the petitioner] is, or might be, innocent of the [offense]."). Accordingly, this claim does not present a cognizable basis for granting federal habeas relief.

In any event, Foster has not established his actual innocence. To meet this extraordinary exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup*, 513 U.S. at 324. A petitioner who asserts actual innocence "must *demonstrate* innocence; the burden is his, not the state's[.]" *Buie v. McAdory*, 341 F.3d 623, 626-27 (7th Cir. 2003) (emphasis in original). Furthermore, actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To support a claim of actual innocence the petitioner must come forward with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. He must demonstrate that "in light of new evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006). This is a difficult standard to meet, and such claims are "rarely successful." *Schlup*, 513 U.S. at 324.

Foster does not meet this exacting standard. Evidence that S.J. had a child with another man does not undercut her direct testimony that Foster sexually assaulted her at gunpoint, the evidence of her physical injuries, or the DNA evidence showing that Foster had sexual intercourse with her on the night in question. Whether S.J. became pregnant as a result of the

rape was irrelevant. To the extent Foster believes this evidence shows S.J. to have been promiscuous, the jurors were already aware that S.J. had more than one sexual partner at the time of the offense, and they nevertheless chose to credit her testimony. Foster has not demonstrated that evidence on this peripheral matter would have changed the jury's decision. *See Whitlock v. Godinez,* 51 F.3d 59, 64 (7th Cir. 1995) (petitioner did not establish actual innocence based on new evidence that merely "add[ed] to the baggage" of state's witness, since the jury was made aware of issues impacting the witness's credibility at trial). Accordingly, this claim is denied.

Pursuant to RULE 11 of the RULES GOVERNING SECTION 2254 CASES, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons fully explained above, Foster's claims are not cognizable in this proceeding or are otherwise without merit under AEDPA standards. The court finds no basis to conclude that jurists of reason could debate the outcome of the petition or find a reason to encourage Foster to proceed further. Accordingly, the court declines to issue Foster a certificate of appealability.

III.   CONCLUSION

For the reasons set forth above, the petition (DE 1) is DENIED, and the petitioner is DENIED a certificate of appealability.

SO ORDERED.

ENTERED:  June 11, 2014

/s/ JON E. DEGUILIO
Judge
United States District Court